50 331
50 340
50 560

THE STATE, JOHN J. CLEARY AND WILLIAM M. HIBBS,. PROSECUTORS, v. THE INHABITANTS OF THE CITY OF TRENTON.

1. The seventeenth section of the charter of the city of Trenton provides the mode in which the common council shall appoint the police force,. and the twenty-fifth section authorizes the common council to fix by ordinance the term for which they shall hold their office.

2. The common council, in the exercise of its power, having provided that policemen shall hold their offices during good behavior, they cannot be removed, by force of the act of February 23d, 1886, for any cause other than the causes for removal specified in said act.

On *certiorari* to remove an ordinance of the common council of the city of Trenton.

Argued at November Term, 1887, before Justices DEPUE, VAN SYCKEL and KNAPP.

For the plaintiffs, *G. D. W. Vroom.*

For the defendants, *W. M. Lanning.*

The opinion of the court was delivered by

VAN SYCKEL, J.    The prosecutors, who are members of the police force of the city of Trenton, have certified into this court an ordinance of the common council of said city, passed May 17th, 1887, which is as follows :

"Section 1. That the ordinance entitled 'A further supplement to an ordinance to establish, regulate and control a day and night police, passed May 1st, 1874,' which supplement was passed March 30th, 1887, be and the same is hereby repealed."

The supplement of March 30th, 1887, intended to be repealed by the above ordinance is as follows :

"Section 1. That the chief of police, lieutenants, sergeants and patrolmen elected under and by virtue of the provisions of an ordinance to which this is a supplement, and the several supplements thereto, and now in office, and all who may hereafter be elected thereto, shall severally hold their respective offices and continue in their respective employments as such municipal officers and employees during good behavior, efficiency and residence in the city of Trenton."

Under the ordinance of 1874 it was in the first section provided " that the police department of the city of Trenton shall consist of a marshal, who shall be chief of police, two aids to the marshal, and fourteen policemen.    The council shall, on the first Tuesday in May, in each and every year, or as soon thereafter as may be convenient, elect by ballot two aids to the marshal and fourteen policemen."

By this ordinance the term of office of policemen was fixed at one year.    The term of office of the city marshal is fixed by the seventeenth section of the city charter, also at one year.

The apparent object of the common council in passing the ordinance of March 30th, 1887, was to bring the police department within the operation of the act of the legislature of February 23d, 1886 (Rev. Sup., p. 515, § 58), which provides " that no person shall be removed from office or employment in the police department of any city, or from the police force of any city, for political reasons or for any other cause than

incapacity, misconduct, non-residence or disobedience of just rules and regulations established or which may be established for the police force or police department of such city."

The first clause of this act (section 58) was held to be un-constitutional by the Court of Errors, in *New Brunswick* v. *Fitzgerald*, 19 *Vroom* 457. The second clause was sustained, and, as stated in the opinion of the Chief Justice, its effect is this : " That hereafter no policeman in any city can be re-moved from office except for misconduct or cause shown after trial."

It is conceded that the act of 1886 prohibits the removal of officers without cause, only during the term for which they were elected or appointed.

Prior to the passage of the ordinance of March 30th, 1887, the Trenton police were elected for one year only, but that ordinance changed the official tenure from year to year to one during good behavior, efficiency and residence in the city of Trenton. If, therefore, that ordinance was a legal exercise of the authority of the common council, the ordinance of May 17th, 1887, is in contravention of and an illegal attempt to override the provision of the act of February 23d, 1886.

The question in the case is whether the passage of the or-dinance of March 30th, 1887, making the tenure of office during good behavior, was authorized by the city charter. Section 17 of the city charter (*Pamph. L.* 1874, *p.* 339), is as follows : " That the common council, at the regular meeting on the third Monday in April, or as soon thereafter as cir-cumstances will permit, shall, by the votes of the majority of all its members, appoint a city clerk, one member of the board of city assessors, a city treasurer, a city solicitor, and a city marshal, a city surveyor, an overseer of the poor, a street com-missioner, a sealer of weights and measures, keeper of the public pound, two police justices, and shall at the same time elect by ballot two persons to act as city physicians ; should any ballot contain the name of more than one person for city physician, such ballot shall not be counted, and the two per-sons receiving the highest number of votes shall be declared

elected; and shall from time to time appoint such other subordinate officers as the common council deem necessary for the ordering and governing of the city, and the execution of the powers and duties conferred and imposed upon the corporation by this act; the officers above named shall hold their several offices for one year, unless sooner removed, and until their successors shall be appointed and qualified."

It will be observed that two classes of officers are provided for by this section. First, those who are specifically named therein, and secondly, such other subordinate officers as the council shall deem necessary for the ordering and governing of the city, who are to be appointed, not at the time of choosing other officers, but from time to time by the common council.

Assuming that the appointment of the police force is controlled and governed by this seventeenth section of the city charter, the words " the officers above named shall hold their several offices for one year " are of doubtful import and are susceptible of either of two interpretations. It may be held that the " officers above named " include as well those called " subordinate officers " as those particularly named, regarding them as officers styled " subordinate officers," although no name is designated for the office they shall hold. On the other hand, there is much force in the contention that the year term applies only to the city clerk and the other officers who are particularly named in the seventeenth section ; that the words " above named," in their general acceptation or ordinary sense, mean to discriminate or specify by giving a particular appellation.

The language of this section, standing by itself, is of doubtful import, but we think that a further provision of the charter renders it quite clear which of the two interpretations should be adopted. The twenty-fifth section of the city charter, subdivision 30, gives the common council power to pass, modify, amend and repeal ordinances to " establish, regulate and control a day and night police, and to regulate and define the

manner of their appointment and removal, their duties and their compensation."

If in virtue of this provision of the charter it is held that police officers are not included among the subordinate officers referred to in section 17, then the appointment of a police force was not the exercise of any authority given to the common council by that section, and consequently it can impose no limitation upon the term for which the police force may be appointed. But assume that the case of *Volk* v. *Newark*, 18 *Vroom* 117, requires that the two sections shall be construed in harmony, giving to section 25 the effect of regulating the manner in which the common council shall exercise the power conferred upon it by the seventeenth section, and excluding the idea that it was intended to withdraw the office of policeman altogether from the operation of section 17.

Giving to section 25 this restricted scope, what is its effect? There is no such provision in the charter with respect to any other city officer. The appointment of all other officers, those particularly named as well as those called subordinate officers, is governed and controlled exclusively by the seventeenth section. Police officers are a class separated from other officers by section 25, and created by common council by ordinance passed in virtue thereof. They can have no potential existence until common council shall ordain their being by ordinance, and are a specific class of officers, not made such in terms by the charter itself, but by the exercise by the common council of powers conferred upon it as a legislative body. The language of the twenty-fifth section shows a clear intention to withdraw the police force from the operation of that part of the seventeenth section which relates to subordinate officers, and to provide for it a manner of appointment and removal peculiar to itself.

The "manner of appointment," in section 25, means something more than the mere method of selecting the police force. The appointment, under the authority of *Volk* v. *Newark*, *supra*, must be made, in accordance with section 17, by the vote of a majority of the members of council, and the mode

cannot be changed by ordinance. There was no necessity, therefore, for an ordinance prescribing what the legislature had in express terms directed, and if the words "manner of appointment" have no wider significance than mere mode of selection, the power conferred in this respect is absolutely useless. In fact, assuming that these officers must be selected as section 17 directs, we have this absurd rendering of section 25, viz. : that the common council may pass ordinances to regulate and define the mode of appointing the police, provided the mode they adopt is that prescribed by section 17. So that this comprehensive language will be held to give the common council no discretion in the manner of appointment, but simply to authorize an ordinance reiterating what has been irrevocably ordained by the law itself. Such an interpretation cannot be accepted. In order to give a reasonable significance to the words "manner of appointment and removal," in the twenty-fifth section, it must be held that it was the purpose of this legislation to bestow upon the common council the power to pass ordinances, not only establishing a police force, but also regulating and defining the time for which they shall hold their offices. It was not intended to confer the power, to establish the mode of appointing, for that would conflict with the mode clearly defined in section 17, while a reasonable discretion in declaring what the tenure of the office shall be may be exercised in harmony with the prior section. The mode of appointment being contained in section 17, the term for which the office shall be held must be regulated and defined in pursuance of section 25. In this way only can the two sections be harmonized.

The duty of the common council to appoint a police force in the mode prescribed by section 17 cannot co-exist with the right under section 25 to adopt another mode in their discretion. If "manner," in the latter section, means "mode," then police officers are not to be appointed as in the prior section is directed, but in the mode to be prescribed by ordinance under the latter section, and they are not within the operation

of section 17. In either view the year term has no relation to the relators.

It was therefore competent for the common council, in pursuance of the power given in section 25, to pass the ordinance of March 30th, 1887, that policemen should hold their offices during good behavior.

The vice of the ordinance of March 18th, 1885, in the case of Volk v. Newark, was that it was an attempt to transfer the appointing power from the common council, where it was lodged by law, to the common council and the mayor of the city. No such infirmity exists in this case. The relators were appointed in accordance with the requirement of section 17.

The only question, then, is whether the ordinance of May 17th, 1887, changing the term of office from one during good behavior to a term for one year, is in conflict with the act of the legislature of March 23d, 1886.

That act expressly prohibits removal from office in the police department for political reasons, or for any cause other than incapacity, misconduct, non-residence or disobedience of just rules and regulations. The language could not be more specific or clear. The legislative purpose is unmistakable to set apart these officers as a class that shall not be affected by political changes, and to encourage them to a more careful discharge of their functions by a sense of security that they will not be displaced so long as they are faithful. Whether civil service rules will render the police service more efficient is a question which does not pertain to this discussion. Our duty ends when we interpret the law so as to give effect to the legislative intention as expressed in the language of the law-maker.

The relators being entitled to their offices for a term to continue during good behavior, and from which they cannot legally be removed except for misconduct, the effect of the ordinance certified will be, if not arrested, to remove them by lapse of time. If the tenure of the office can be changed to one year, it may be reduced to one month or one week, and thus the act of 1886 will furnish no obstacle to the removal

of policemen at the mere will of council, and for reasons other than those which the legislature has declared shall be the only reasons to justify a removal.

: In our opinion, the ordinance of May 17th, 1887, is unauthorized and illegal, and should be set aside.